UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | | |
|---|---|---|
| JAMES BRIAN MARKSBURY, | ) | |
| | ) | |
| Plaintiff, | ) | No. 5:09-CV-24-REW |
| | ) | |
| v. | ) | |
| | ) | OPINION & ORDER |
| SCOTT ELDER, HARRODSBURG, | ) | |
| KENTUCKY, RICK MOBERLY, and | ) | |
| JASON ELDER, | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\* \*\*\* \*\*\* \*\*\*

Defendant Jason Elder ("Elder"),[1] by counsel, moved for summary judgment as to all counts listed in the First Amended Complaint. *See* DE #25 (Motion for Summary Judgment); DE #25-1 (Memorandum in Support). Plaintiff responded in opposition, *see* DE #31 (Response in Opposition), and Defendant subsequently replied. *See* DE #37 (Reply). Having reviewed the filings and full record, under the required standards, the Court **GRANTS** Defendant's motion for summary judgment. The applicable limitations period bars Plaintiff's section 1983 and similar state claims against Jason Elder.

**I. Relevant Background**[2]

This matter emerges from the arrest and subsequent treatment of Plaintiff James Brian

---

[1] This matter includes two Defendants with the same last name: Scott Elder and Jason Elder. Because the motion at issue involves just one, the Court defaults to use of the last name "Elder" to refer only to Jason Elder. Any references to Defendant Scott Elder will be specific.

[2] In accordance with Federal Rule of Civil Procedure 56, the Court discusses the facts in favor of Plaintiff, the non-movant.

1

Marksbury on December 26, 2007. *See* DE #18 (First Amended Complaint) at ¶¶ 5-14. While the Complaint and First Amended Complaint are largely devoid of precise factual allegations, Plaintiff alleges that, on that day, Defendants Scott Elder, Rick Moberly, and Jason Elder, acting in the course and scope of their employment, applied excessive force to Plaintiff. *See* DE #18 at ¶¶ 1-5. Additionally, Defendant Harrodsburg supposedly failed in its duties to train and/or supervise the officers. *See id.* at ¶ 11. As a result, Marksbury contends, he endured severe physical pain and suffering and has been harmed permanently. *See id.* at ¶¶ 9, 14.

On December 24, 2008, Plaintiff filed a pro se Complaint in Mercer County Circuit Court against Defendants Scott Elder and Harrodsburg, Kentucky ("original Defendants"). *See* DE #1-2 (State Court Record) at 2-4 (Mercer Circuit Court Complaint). That original Complaint – charitably read – asserted claims under 42 U.S.C. § 1983 and Kentucky law, including unreasonable seizure of Marksbury, actions that harmed the safety of Plaintiff, conduct violative of Marksbury's rights under tort law, failure to train and/or supervise, vicarious liability, and outrageous conduct. *See id.* at ¶¶ 4-6, 9-10, 12. The two original Defendants removed the case to federal court on January 21, 2009. *See* DE #1 (Notice of Removal).

On June 21, 2010, eighteen months later, the original parties jointly moved to permit Marksbury, by counsel, to file a First Amended Complaint, which joined two new Defendants: Rick Moberly and Jason Elder. *See* DE #15 (Joint Motion); DE #18. The First Amended Complaint advanced the same variety of claims against new Defendant Elder. *See* DE #18 at ¶¶ 5-14. Plaintiff filed a summons return to document service to Elder. *See* DE #22 (Summons). Twelve days later, Defendant moved for summary judgment, alleging the claims against him to be barred by the applicable statute of limitations. *See* DE #25.

**II. Standard of Review**

Pursuant to Federal Rule of Civil Procedure 56, summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[3] *See* Fed. R. Civ. P. 56(a). A reviewing court must construe the evidence and draw all reasonable inferences from the underlying facts in favor of the nonmoving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986); *Lindsay v. Yates*, 578 F.3d 407, 414 (6th Cir. 2009). Additionally, the court may not "weigh the evidence and determine the truth of the matter" at the summary judgment stage. *See Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2511 (1986).

The burden of establishing the absence of a genuine issue of material fact initially rests with the moving party. *See Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986) (requiring the moving party to set forth "the basis for its motion, and identify[] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate an absence of a genuine issue of material fact"); *Lindsay*, 578 at 414 ("The party moving for summary judgment bears the initial burden of showing that there is no material issue in dispute."). If the moving party meets its burden, the burden then shifts to the nonmoving party to produce "specific facts" showing a "genuine issue" for trial. *See Celotex Corp.*, 106. S. Ct. at 2253; *Bass v. Robinson*, 167 F.3d 1041, 1044 (6th Cir. 1999). In

---

[3] By December 1, 2010, amendment, the language of the summary judgment standard changed. However, the language changes have not altered the standard itself. *See* Fed. R. Civ. P. 56 advisory committee's note (2010) ("The standard for granting summary judgment remains unchanged."). The Court applies the newest Rule 56 language here, finding, per the standard articulated in the United States Supreme Court's order adopting the rules amendments, application of the amended language to be just and practicable.

cases, as here, where the defendant is the moving party, "the plaintiff, to survive the defendant's motion, need only present evidence from which a jury might return a verdict in his favor. If he does so, there is a genuine issue of fact that requires a trial." *See Anderson*, 106 S. Ct. at 2514. However, "Rule 56(c) mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *See Celotex Corp.* at 106 S. Ct. at 2552.

A fact is "material" if the underlying substantive law identifies the fact as an essential element. *See Anderson*, 106 S. Ct. at 2510. Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *See id.* A "genuine" issue exists if "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *See id.* at 2511; *Matsushita Elec. Indus. Co.*, 106 S. Ct. at 1356 ("Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'") (citation omitted). Such evidence must be admissible at trial. *See Salt Lick Bancorp. v. FDIC*, 187 F. App'x 428, 444-45 (6th Cir. 2006).

Where the party moving for summary judgment would also bear a burden at trial, such as the establishment of an affirmative defense, the moving party bears a greater burden to show entitlement to summary judgment. *See Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002). In *Arnett*, the Sixth Circuit observed:

> [I]f the moving party also bears the burden of persuasion at trial, the moving party's initial summary judgment burden is "higher in that it must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it."

4

*Id.* at 561 (quoting 11 James William Moore, et al., *Moore's Federal Practice* § 56.13[1], at 56-138 (3d ed. 2000)). The moving party must establish that the statute of limitations has run, and if that burden has been met, then the non-moving party must establish that an exception applies. *See Campbell v. Grand Trunk Western Railroad* Co., 238 F.3d 772, 775 (6th Cir. 2001) (outlining the analysis). Statute of limitations arguments for summary judgment require "'factually intensive'" analysis. *See Stratton v. Womack*, 230 F. App'x 491, 498 (6th Cir. 2007) (quoting *Watt v. United States*, 162 F. App'x 486, 497 (6th Cir. 2006)). The Court notes that, while application of a statute of limitations sometimes hinges on factual questions, assessment of relation back under Rule 15(c) presents a question of law. *See, e.g.*, *Robinson v. Clipse*, 602 F.3d 605, 607 (4th Cir. 2010).

**III. Analysis**

Elder contends that the applicable statute of limitations bars the claims against him, and he argues that, accordingly, judgment should be entered as a matter of law. Plaintiff asserts that his claim is timely under the statute of limitations and, in the alternative, relates back to the original complaint.

As an initial matter, the statute of limitations defense raised here by Elder might ordinarily be raised under Federal Rule of Civil Procedure 12(b)(6) or even Rule 12(c). *See, e.g.*, *Burdine v. Kaiser*, No. 3:09-CV-1026, 2010 WL 2606257 (N.D. Ohio Jun. 25, 2010) (applying Rule 12(c) to an almost identical posture in a similar case factually). However, here the parties have placed additional material into the record for evaluation beyond the pleadings, under the Rule 56 summary judgment standard. *See, e.g.*, DE #26 (Transcript of Deposition of Defendant Scott Elder); DE #27 (Transcript of Deposition of Plaintiff James Brian Marksbury); DE #31-1

5

(Plaintiff's Exhibit A: KYIBRS Report); DE #31-2 (Plaintiff's Exhibit B: Court Docket); DE #31-3 (Plaintiff's Exhibit C: Police Department Report); DE #31-5 (Plaintiff's Exhibit E: City File); DE #31-6 (Plaintiff's Exhibit F: Mercer District Court Record); DE #31-7 (Plaintiff's Exhibit G: Kentucky State Police Records).

**A. The Statute of Limitations & Accrual of the Claim**

As noted previously, the First Amended Complaint advanced claims against Elder under 42 U.S.C. § 1983 and Kentucky law for causing severe and grievous physical injuries, unreasonably seizing Plaintiff, harming the safety of Marksbury, violating Plaintiff's rights under tort law, and acting outrageously. *See* DE #18 at ¶¶ 5-14. Marksbury ties all of these claims to the alleged personal injuries resulting from application of excessive force. *See id.* at ¶ 1 (calling case a "damages action . . . resulting from excessive force used by Defendants"); DE #31 at 2 ("The complaint asserted various causes of action, all based on the excessive use of force during a December 26, 2007 arrest."). To the extent the parties address the specific statute of limitations for each claim, the parties appear to agree that a one-year statute of limitations applies.[4] *See* DE #25-1 at 5 (addressing section 1983 and Kentucky personal injury actions); DE #31 at 4 (discussing section 1983 actions). However, the parties disagree sharply about accrual.

On the record before the Court, the statute of limitations began to run on the date of arrest. Courts determine the statute of limitations for section 1983 claims by looking to the most analogous statute of limitations established by the law of the state where the events allegedly occurred. *See Wallace v. Kato*, 127 S. Ct. 1091, 1094-95 (2007); *Owens v. Okure*, 109 S. Ct.

---

[4] Because Plaintiff's claims emerge and result from the alleged personal injuries due to application of excessive force, those claims generally fall under the personal injury statute of limitations. *See* Ky. Rev. Stat. Ann. § 413.140(1)(a) (personal injury statute of limitations).

6

573, 576-78 (1985). Kentucky law sets a one-year statute of limitations for asserting personal injury claims. *See* Ky. Rev. Stat. Ann. § 413.140(1)(a). Federal law determines when a cause of action accrues and the statute of limitations begins to run. *See Wallace*, 127 S. Ct. at 1095. The statute begins to run "when the reasonable person knows, or in the exercise of due diligence should have known, both his injury and the cause of that injury." *Bishop v. Children's Ctr. for Dev. Enrichment*, 618 F.3d 533, 536-37 (6th Cir. 2010) (quoting *Campbell*, 238 F.3d at 775).

Here, all claims flow from alleged excessive force relative to arrest, and such claims accrued at that time. *See Fox v. DeSoto*, 489 F.3d 227, 233 (6th Cir. 2007) ("A § 1983 claim for excessive force in effectuating an arrest accrues at the time of arrest.") (citing *Wallace*, 127 S. Ct. at 1095). Marksbury knew at the time that he had suffered an alleged injury, and he knew at least the general identities of the involved municipality and police force. His cause of action was "complete and present" on that date, and he could immediately have filed suit. *See Wallace*, 127 S. Ct. at 1095 (discussing normal rule that action for "wrongful arrest" accrues on the date of such detention). Accrual simply does not await identification of a particular wrongdoer. *See, e.g.*, *Estate of Knight ex rel. Knight v. Hoggard*, 182 F.3d 908, at *4 (4th Cir. 1999) (table) ("The 'new' evidence obtained by the Estate which precipitated the lawsuit seven years later was the identification of Hoggard as the particular officer . . . This evidence might have made the Estate's case stronger, but given the information available to the Estate from the beginning, its discovery did not affect the running of the statute of limitations."). Notably, Marksbury claims specific memory of the initial arrest. *See* DE #27 at 21-24.[5] That is, his knowledge was not

---

[5] For pinpoint citations to transcripts, the Court cites to the actual transcript page, not the sheet number.

limited to the law enforcement reports that he roundly critiques.

Further, Marksbury faced criminal prosecution immediately. Indeed, he pled guilty to resisting arrest within three months of the date. Obviously, he immediately knew or had access to the particulars of the arrest at issue.

While Marksbury attempts to blame the Defendants for his lack of knowledge about Elder's involvement, the police reports conclusively show that multiple officers were involved in Plaintiff's arrest on the date in question. Scott Elder's police report, Plaintiff's Exhibit A, says, inter alia: (a) "Subject used physical force against **officers** so that he could not be handcuffed."; (b) "The subject attempted to push **officers** down and at that point we forced the subject to the ground and placed him into handcuffs."; and (c) "While taking the suspect to the cruiser he attempted to kick at **officers** several times." *See* DE #31-1 at 3 (emphasis added). Jason Elder's name may not appear, but this report apprised Marksbury that multiple officers were involved in the original take down.

As Kentucky recognizes, "[T]he discovery rule does not operate to toll the statute of limitations to allow an injured plaintiff to discover the identity of the wrongdoer unless there is fraudulent concealment or a misrepresentation by the defendant of his role in causing the plaintiff's injuries." *McLain v. Dana Corp.*, 16 S.W.3d 320, 326 (Ky. Ct. App. 1999) (recently approved in *Queensway Fin. Holdings, Ltd. v. Cotton & Allen, P.S.C.*, 237 S.W.3d 141, 151 (Ky. 2007)). Indeed, "'[a] person who knows he has been injured has a duty to investigate and discover the identity of the tortfeasor within the statutory time constraints.'" *See Queensway Fin. Holdings, Ltd.* at 151 (quoting *Combs v. Albert Kahn Associates, Inc.*, 183 S.W.3d 190, 199 (Ky. Ct. App. 2006)).

There is no basis for application of tolling premised on fraudulent concealment. Plaintiff cites to no record evidence of any fraudulent behavior by Elder, or indeed by anyone.[6] The Scott Elder report shows that multiple officers were involved. Marksbury presumably could have secured discovery in the criminal case, related to the resisting charge, via an open records request post-conviction, or via an early filing and prompt discovery here.[7] Whether Elder did or did not file (or should have filed) a use of force report is not supported in the record, but in any event, Plaintiff has not demonstrated impropriety by Elder concealing a cause of action. This is the import of the tolling principle.

To the full extent a one-year statute of limitations applies, judgment will be appropriate as a matter of law, unless Marksbury shows, as an alternative ground for denying the motion for summary judgment, that the claims against Elder relate back to the original Complaint. This he cannot do.

**B. Relation Back of the Claim**

The parties agree on the relation-back standard under Rule 15. *See* DE #25-1 at 7; DE

---

[6] Marksbury attempts to analogize the facts of the instant case to those of *Liuzzo v. United States*, 485 F. Supp. 1274 (6th Cir. 1980). *See* DE #31 at 4-5. In *Liuzzo*, children of a civil rights worker, Viola Liuzzo, filed a claim against the United States and its Federal Bureau of Investigation alleging the Government to be responsible for their mother's death and mishandling and abuse of her body after death. *See Liuzzo*, 485 F. Supp. at 1275. Defendant moved to dismiss, arguing that the twelve years that had elapsed since the murder barred the claims under the applicable statute of limitations. *See id.* After those twelve years, an FBI informant disclosed for the first time that he participated in violence, allegedly including the murder, that had been approved by his contact agent. *See id.* at 1279. In the instant case, in stark contrast to *Liuzzo*, the police report on which Plaintiff apparently relied to bring his claim explicitly indicates that **multiple** officers applied force during arrest.

[7] Indeed, Scott Elder disclosed Jason Elder's involvement at his deposition, and Defendants identified Jason Elder as a witness in the initial case disclosure. Plaintiff could have pursued the claim in a manner that would have discovered the identity well within the statutory limitation period.

#31 at 6. However, Marksbury and Elder disagree sharply regarding standard application.

Under Rule 15(c)(1), an amendment to a pleading relates back the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Fed. R. Civ. P. 15(c)(1). Here, the parties agree that the Rule 15(c)(1)(C) test applies,[8] and they argue whether the amendment arises out of the same conduct, transaction, or occurrence; whether, within the time period provided by Rule 4(m), Defendant received sufficient notice of the action so as not to be prejudiced; and whether Elder knew or should have known the action would be brought against him, but for a mistake concerning the proper party's identity.

1. Same Conduct, Transaction, or Occurrence

The allegations in the First Amended Complaint arise out of the same conduct, transaction, or occurrence set out in the original Complaint. While Rule 15(c)(1)(B) offers no

---

[8] Plaintiff does not make a Kentucky law argument under Rule 15(c)(1)(A). Kentucky's Rule 15.03 appears to be more restrictive than its federal counterpart, requiring notice to the new defendant within the original limitations period.

definition of "conduct, transaction, or occurrence," the United States Supreme Court has emphasized a "common core of operative facts." *See Mayle v. Felix*, 125 S. Ct. 2562, 2574-75 (2005) (denying amendment in habeas proceeding); *Moross Limited Partnership v. Fleckenstein Capital, Inc.*, 466 F.3d 508, 518 (6th Cir. 2006) (denying amendment of a fiduciary duty complaint to add misrepresentation/omission in investment materials, where original allegations focused on cherry-picking investments). The standard requires a fact-focused inquiry. *See Mayle*, 125 S. Ct. at 2574-75. Amendment should be determined improper if the amended claim "asserts a new ground for relief supported by facts that differ in both time and type from those the original pleading set forth." *See id.* at 2566; *United States ex re. Miller v. Bill Harbert Int'l Const., Inc.*, 608 F.3d 871, 881-85 (D.C. Cir. 2010) (applying standard).

Force applied on December 26, 2007, is the focus of both pleadings. Further, the police report supporting the resisting arrest charge spanned both the arrest and hospital scenarios. While Elder attempts creatively to parse the occurrence into "two separate applications of physical force by three different officers" and urges the Court to perceive each application of force as wholly different, *see* DE #25-1 at 7-8, the argument is not persuasive.[9] Defendant Scott Elder produced a single narrative – that is, a representation of the events as a common core of operative facts – about the events with a KYIBRS Report that addressed the whole occurrence. *See* DE #31-1 at 3-4. Defendant City of Harrodsburg maintained its records on Marksbury's investigation, arrest, and hospitalization in a single file. *See* DE #31-5. The Kentucky State Police followed the same practice. *See* DE #31-7. While Defendant identifies two separate

---

[9] Notably, Defendant cites no caselaw to support his interpretation of "conduct, transaction, or occurrence." *See* DE #25-1 at 7-8.

applications of force, he fails to acknowledge the continuing occurrence surrounding both vis-a-vis the sequence of events on December 26, 2007. In a continuing sequence, Scott Elder took custody of Plaintiff at the scene of arrest where officers applied force the first time, transported Marksbury to the hospital, and ended up applying force at the hospital in an intra-custody incident. On the record before the Court, the pleadings overlap sufficiently for Rule 15(c)(1)(B).

2. Sufficient Notice

Given the Court's resolution of the Rule 15(c)(1)(C)(ii) argument below, the Court will not address the Rule 15(c)(1)(C)(i) contention here. *See* Fed. R. Civ. P. 15(c)(1)(C) (utilizing the conjunctive "and" between subsections (i) and (ii)); *Krupski v. Costa Crociere S. p. A.*, 130 S. Ct. 2485, 2491-92 (2010) (quoting rule with conjunctive "and" that requires both Rule 15(c)(1)(C)(i) and 15(c)(1)(C)(ii) requirements to be met).

3. Knew or Should Have Known, But for Mistake

Plaintiff simply cannot satisfy Rule 15(c)(1)(C)(ii) concerning notice of mistake. Said rule provides that an amendment to a pleading relates back to the original pleading when the amendment changes the party or the name of a party against whom a claim is asserted if the party to be brought in by amendment "knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity." *See* Fed. R. Civ. P. 15(c)(1)(C)(ii). However, under binding Sixth Circuit precedent, a plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a "mistake concerning the proper party's identity" within the meaning of Rule 15(c)(1)(C)(ii).[10] *See Cox v.*

---

[10] Several courts have suggested a possible Sixth Circuit split regarding *Cox* and Rule 15(c). *See, e.g.*, *Williams v. TLD America Corp.*, No. 3:08-CV-510-H, 2010 WL 456869, at *3 n.6 (W.D. Ky. Feb. 3, 2010) (slip copy); *Daily v. Monte*, 26 F. Supp. 2d 984, 985-88 (E.D. Mich.

*Treadway*, 75 F.3d 230, 240 (6th Cir. 1996); *Courtney v. White*, No. 3:09-CV-P36-H, 2010 WL 569834, at *2 (W.D. Ky. Feb. 12, 2010) (slip copy). The Sixth Circuit continues to adhere to *Cox*. *See Bradford v. Bracken County*, No. 09-115-DLB, 2011 WL 127131, at *6 (E.D. Ky. 2011) (slip copy) ("The Sixth Circuit more recently reaffirmed *Cox*'s continuing precedential value in an unpublished opinion holding that a 'plaintiff's lack of knowledge pertaining to an intended defendant's identity does not constitute a mistake concerning the party's identity within the meaning of Rule 15(c).") (quoting *Moore v. Tennessee*, 267 F. App'x 450, 455 (6th Cir. 2008)).

Here, Plaintiff failed to read the police reports closely to observe that multiple officers obviously applied force. While overlooking language in a police report may feel like a mistake, the relevant calculus under Rule 15 is whether a pleading mistake has been made, as known or chargeable to Defendant. The original complaint targeted behavior only by Scott Elder, a person indisputably involved in the December 26 events. That document referenced multiple officers, relative to the City's alleged vicarious liability. *See* DE #1-2 at 3-4 ¶ 10 (claiming that City should be vicariously liable for "wrongful conduct of any and all of its agents . . . officers . . . whose wrongful acts were a substantial contributing factor to Plaintiff's injuries, to include but not limited to Elder"). However, the pleading addressed, explicitly, behavior only by Scott Elder. *See id.* at 2 ¶ 1 (referencing "excessive force used by Defendant Elder"); ¶ 4 (decrying actions "of Elder [that] constitute an unreasonable seizure"). Jason Elder quite reasonably would have

---

1998). Under this suggestion, the *Cox* rule would stand in conflict with the *Berndt* court's holding. However, the *Berndt* court offered only guiding language in dicta. *See Berndt v. Tennessee*, 796 F.2d 870, 884 (6th Cir. 1986); *Burdine*, 2010 WL 2606257, at *3 (persuasively distinguishing *Berndt* and *Cox*).

received this as an intentional election against making claims concerning his involvement. The report let it be known that Marksbury encountered several officers on the date, yet Marksbury named but one individual officer in the suit. He did not name fictitious additional defendants or indicate an intention to discover and sue more related persons. Jason Elder had no reason to think he would have been named "but for an error." *See Krupski*, 130 S. Ct. at 2494. Indeed, Plaintiff continues to pursue claims against the originally named Defendant, Scott Elder. He made no mistake in suing Scott Elder instead of Jason Elder; he simply now seeks to expand the scope of the case by adding a new defendant. This is beyond the Rule 15 relation-back principle.

Thus, the Court finds relation back inapplicable here. Jason Elder did not know or have any reason to think that Plaintiff failed to sue him because of a mistake concerning the proper party defendant.

**IV. Conclusion**

The Court's decision means that any causes of action – whether under section 1983 or state law – that involve the one-year limitation period of Kentucky Revised Statute § 413.140(1)(a) are time-barred. The Court **GRANTS** Defendant's motion under that statute.

**Within seven (7) days**, Plaintiff **SHALL** indicate whether he asserts an outrage claim. The First Amended Complaint references outrageous conduct and "extreme emotional distress." *See* DE #18 at ¶ 14. That tort falls under a five-year statute of limitations, which the parties did not address. *See Bennett v. Malcomb*, 320 S.W.3d 136, 137 (Ky. Ct. App. 2010) (noting five-year limitations period). The Court is dubious of the validity of such a gap-filler in the excessive

force context,[11] but directs clarification of the topic. Defendants **MAY** respond to Plaintiff's clarification as they see fit.

This the 12th day of May, 2011.

Signed By:
*Robert E. Wier* REW
United States Magistrate Judge

---

[11] As *Bennett* further notes, "[t]he tort of outrage was not intended to provide a cause of action for plaintiffs who simply failed to bring a traditional tort claim within the statute of limitations." *Bennett*, 320 S.W.3d at 137. That is, "the tort of outrage was intended to fill the gap left by outrageous conduct that harms a plaintiff, but leaves him without recovery via the traditional torts." *Id.* The Sixth Circuit has applied this limitation on the outrage tort specifically in a stop and seizure case, with claims brought under section 1983 and Kentucky law. *See Lee v. Hefner*, 136 F. App'x 807, 814 (6th Cir. 2005).